## No. 8874.

## ABSHIRE v. WILLIAMS ET AL.

EVIDENCE.— *Witness.—Decedents' Estates.—Mortgage.—Heirs of Intestate Mortgagor.—Receipts for Payments.*—On trial of an action against the heirs of an intestate, to foreclose a mortgage given by him in his lifetime to secure a note, it appearing from the evidence that the note was lost, and that the endorsements of payments on the mortgage were made by the mortgagor, and a receipt, "I, C. B. A., acknowledge the receipt of $350, this January the 11th, 1866," signed by him, having been admitted in evidence, the mortgagee was not competent, under section 2, 2 R. S. 1876, p. 133, to testify that it was given for two payments, one December 26th, 1865, for $50, and the other January 6th, 1866, for $300, endorsed on the mortgage by the intestate, and given in evidence by the plaintiff.

SAME.—In such case, evidence as to a note of the decedent for $170, made to the plaintiff, and filed as a claim against the mortgagor's estate, did not tend to prove the disputed payments, and was rightly excluded.

SAME.— *Weight of Evidence.—Supreme Court.*—The Supreme Court will not disturb a verdict on the weight or conflict of evidence.

SAME.—*Objections to Evidence.—Practice.—Presumption.*—Where evidence is admitted over objection, the grounds of the objection must be made to appear to render it available; but, where evidence has been excluded, the ground is immaterial, and the action of the trial court is presumed to have been right, the contrary not appearing.

From the Madison Circuit Court.

*C. L. Henry, E. P. Schlater, A. B. Young* and *W. S. Diven,* for appellant.

*C. D. Thompson, M. A. Chipman* and *H. C. Ryan,* for appellees.

MORRIS, C.—This action was brought by the appellant to foreclose a mortgage executed to him by James Williams in his lifetime, on eighty acres of land, situate in Madison county, Indiana, to secure the payment of a note given by Williams to the appellant for $838.00, dated May 20th, 1863, and payable, with interest, eight years from date.

It is stated in the complaint that James Williams, in his lifetime, made payments on the debt secured by the mortgage, as follows: $230, on October the 11th, 1864; $50,

on the 26th day of December, 1865; $300, on the 6th day of January, 1866; $35, on the 28th day of December, 1867; $50, on August 31st, 1870. That on March the 28th, 1866, the appellant released forty acres of the land from the mortgage, and that on the 7th day of November, 1877, he released his lien on ten acres of the mortgaged premises. It is further stated that James Williams, the mortgagor, died intestate in the year 1877, leaving the appellees as his heirs.

The administrator of the estate of James Williams was made a party, but the suit was subsequently dismissed as to him.

The appellees appeared and answered the complaint in two paragraphs: First, the general denial; second, payment. The appellant replied in denial of the second paragraph of the answer.

The cause was submitted for trial to a jury, who returned a verdict in favor of the appellees. The appellant moved for a new trial. The motion was overruled and judgment rendered upon the verdict. The overruling of the motion for a new trial is the only error assigned. The evidence is properly in the record by bill of exceptions.

The appellant put in evidence the mortgage with the payments endorsed thereon. He proved the loss of the note sued on and its contents, the death of the mortgagor, and that the appellees are his heirs; that the mortgage had been properly recorded. He also proved, that on the 8th of December, 1877, he had released his mortgage lien on ten acres of the land embraced in the mortgage. Having proven the book in which certain entries were made to be the mortgage record of Madison county, the appellant read therefrom the following entries, having first read the record of the mortgage in suit:

"I, C. B. Abshire, acknowledge the payment of $350, from James Williams, and hereby release forty acres of the

Abshire *v.* Williams *et al.*

northeast quarter of the northeast quarter of section eight, township eighteen north, of range seven east.

"C. B. $\times$ ABSHIRE.

"Samuel Beal, C. B. Boon, witnesses."  mark.

"State of Indiana, Blackford County.

"Before me, C. B. Boon, a notary public in and for said county, C. B. Abshire acknowledged the execution of the above release of mortgage, March 28th, 1866.

"[SEAL.]                    C. B. BOON, Notary Public.

"Recorded June 5th, 1866."

"OCTOBER 14th, 1877.

"State of Indiana, Wells County.

"To the recorder of Madison county, Esq.: You will please examine your records and release ten acres of a mortgage I hold against James Williams' land, as follows: On the east line of the southeast quarter of section five, township eighteen north, of range eight east, and by reading you will oblige me.   Yours truly,      C. B. ABSHIRE.

"Attest: Witnesses, George Burges, Y. J. Puckett, Isaac Roberts."

"State of Indiana, Wells county, ss.:

"Before me, Jas. R. Bennett, recorder in and for said county, this 7th day of November, 1877, C. B. Abshire acknowledged the execution of the within and foregoing release of mortgage to be his voluntary act and deed. Witness my hand and official seal.     JAMES R. BENNETT,

"[SEAL.]                          R. W. C."

"Received for record this 8th day of December, 1877, at 2 o'clock P. M.                    JACOB HUBBARD,

"Recorder of Madison Co."

It was also shown that the endorsements of payments on the mortgage were in the handwriting of Williams. The appellant then rested.

The appellees called as a witness Henry Keller, who testified that on the 23d day of May, 1873, he saw the mortgagor

pay the appellant $60, which he understood was to be applied in payment of the mortgage sued on.

The appellees then read in evidence a receipt executed by the appellant, as follows:

"I, C. B. Abshire, acknowledge the receipt of $350, this January the 11th, 1866. Wells county, Indiana. To the recorder of the county of Madison: Sir—You will please to look on your records and give James Williams a credit on a mortgage for three hundred and fifty dollars, that I hold on his land, and then take off the numbers of the following land of said mortgage, as follows: The northeast quarter of the northeast quarter of section eight east, township eighteen.        [Signed,]     C. B. Abshire."

The appellant proved in rebuttal, that the body of the receipt read in evidence by the appellees was in the hand-writing of the mortgagor, James Williams. He also put in evidence a note, dated June 9th, 1877, executed by said James Williams in his lifetime to the appellant, payable at one day, with ten per cent. interest, for $170. He also offered to read in evidence an entry in the appearance docket of the Madison Circuit Court, showing that the above note for $170 had been filed in said court against the estate of James Williams, on the 29th day of January, 1879, but that the court, upon the objection of the appellees, refused to allow it to be read in evidence. He also put in evidence a letter written by James Williams and addressed to him, dated November 17th, 1877, in which Williams requested the appellant to go before an officer, "and," in the language of the letter, "be qualified to that order and make it legal, and send it to us as soon as possible, so that we can make our arrangements; then I will make mine and your arrangements all right."

The appellant then offered himself as a witness, and proposed to testify that the receipt for $350, put in evidence by the appellees, was given for the two payments endorsed

on the mortgage—one on the 26th of December, 1865, for $50, the other endorsed January 6th, 1866, for $300—but the court held, upon objection by the appellees, that the appellant was not competent to testify to such facts.

The appellant then called Joshua J. Williams, son of the deceased mortgagor, as a witness, who testified that his father died in June, 1878; that he heard his father say, about two years before his death, that there was something due on the mortgage—about $100 or $150—he did not know just how much. He said he owed the appellant that much, and that he inferred that he owed it on the mortgage. This was all the evidence.

The contest between the parties relates to the receipt of the 11th of January, 1866, for $350, and the payment of $60, testified to by Henry Keller, as having been made on the 23d day of May, 1873. The appellant contends that there is no evidence in the record that Williams paid him $350 on the 11th day of January, 1866. And this is the real question, for if there is any testimony tending to prove that such payment was made, the verdict can not be disturbed on the ground that it is not supported by sufficient evidence. For it is admitted that this sum, together with the endorsements on the mortgage, exceeds by more than a hundred dollars the amount for which the mortgage was given, together with the interest accrued thereon.

The receipt states, that "I, C. B. Abshire, acknowledge the receipt of $350, this January the 11th, 1866." It is signed by the appellant. It can not be pretended that this written statement of the appellant does not tend to prove the receipt of the sum named, at the time stated. It does tend strongly to prove that the appellant did, on the day named, receive of the mortgagor the sum of $350, and it would, in the absence of opposing testimony, justify a jury in finding that the appellant had received of James Williams, on the day named, that sum. The appellant contends that

the conduct of Williams, his admissions, and all the circumstances and testimony in the case show, if not conclusively, yet by a strong and decided preponderance, that this receipt was given, not for $350, paid on the 11th of January, 1866, but for two sums, amounting to $350, paid on the 26th of December, 1865, and on the 6th of January, 1866. This may be—the weight of the evidence, we think, supports this conclusion—but, granting it, the finding of the jury can not, for that reason, be disturbed. This court can not weigh and balance the evidence for the purpose of determining the correctness of a verdict. The rule upon this subject, as now held by this court, is thus clearly stated by HOWK, J., in the case of *The Fort Wayne, etc., R. R. Co.* v. *Husselman*, 65 Ind. 73 : "For, how can this court or its judges possibly know, that the evidence in support of the verdict or finding has been 'clearly and overwhelmingly, or conclusively contradicted?' To arrive at such a conclusion, must we not weigh the evidence? If so, how can we, as an appellate court, by merely reading the written evidence, without any personal knowledge of the intelligence or character of the witnesses, or any of those living indicia before us by which men ordinarily judge of the truthfulness and credibility of evidence, determine that the evidence in support of the verdict or finding has been 'clearly and overwhelmingly, or conclusively contradicted?' We know of no rule or measure by which an appellate court can be safely guided, where it undertakes to determine such a question." *Jordan* v. *D'Heur*, 71 Ind. 199.

In the case before us, as in the case referred to, the question is, "Was there *any* legal evidence introduced on the trial of the cause which *tended* to sustain the verdict of the jury?" We think that such testimony was introduced on the trial, and that, for that reason, the verdict should not be disturbed for the want of sufficient testimony to support it. We think the court did not err in refusing to allow the

appellant to prove that the note of James Williams, for $170, had been filed in the Madison Circuit Court, as a claim against the estate of Williams. The fact would not have tended, in the least, to disprove the disputed payments. It was rightly excluded. Nor do we think the court erred in holding that the appellant was incompetent to testify, as a witness in the cause, to matters occurring prior to the death of James Williams. The suit is against the heirs of James Williams. It is founded upon a contract made with the ancestor, and its object is to affect his real estate. It falls within the last clause of section 2 of the act approved March 11th, 1867, defining who shall be competent witnesses. *Thompson* v. *Mills*, 39 Ind. 528.

It is said, however, that the form of the objection was not sufficient to justify the ruling of the court. The ground of. the objection is quite immaterial. As the court excluded the evidence, it is not necessary that the ground of the objection should appear at all. The presumption will be in favor of the action of the court, and, if it does not appear by the record to have been wrong, it will be presumed to have been right. Where testimony is admitted over the objection of a party, the ground of the objection must appear in order to render it available to the party objecting. There is no available error in the record. The judgment should be affirmed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be affirmed, at the costs of the appellant.